### In re SUMITOMO COPPER LITIGATION.

### This document Relates To All Cases

### No. 96 Civ. 4584(MP).

United States District Court, S.D. New York.

July 12, 2000.

Lovell & Stewart, LLP, by Christopher Lovell and Gary Jacobson, of counsel, New York City, for plaintiffs.

Mayer, Brown & Platt, by Stephen Wolowitz and Anthony J. Diana, of counsel, New York City, for defendants Credit Lyonnais, S.A. and Credit Lyonnais Rouse, Limited.

Loeb & Loeb, New York City, for defendants R. David Campbell and Bipin Shah.

Cadwalader, Wickersham & Taft, New York City, for defendant Global Minerals and Metals, Inc.

Katten Muchin & Zavis, Chicago, IL, for defendant Morgan Stanley & Co., Inc.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Sumitomo Corporation and Sumitomo Corporation of America.

Clifford Chance Rogers & Wells, New York City, for defendants Merrill Lynch & Co., Merrill Lynch Commodity Financing Inc., Merrill Lynch Pierce Fenner & Smith, Inc., and Merrill Lynch Pierce Fenner & Smith (Brokers and Dealers) Limited.

Davis Polk & Wardwell, New York City, for defendants J.P. Morgan & Co., Inc. and Morgan Guaranty Trust Company of New York.

### OPINION

MILTON POLLACK, Senior District Judge.

Credit Lyonnais, S.A. ("CL") and Credit Lyonnais Rouse ("CLR") (collectively referred to as the "Credit Lyonnais Defendants") each move, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Sixth Amended Consolidated Class Action Complaint (the "Complaint") against them for failure to state a claim upon which relief can be granted and for failure to allege fraud with sufficient particularity.

### Background

In the Complaint, plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and the common law of New York alleging that the prices of copper futures contracts traded on the Commodity Exchange Inc. and the Comex division of the New York Mercantile Exchange Inc. were artificially inflated between June 24, 1993 and June 15, 1996,

inclusive, by an alleged conspiracy of certain defendants herein.

A motion to dismiss under Rule 12 must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For the purposes of this motion, the factual allegations of the Complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993).

### Discussion

**I. SUFFICIENCY OF ALLEGATIONS AGAINST CREDIT LYONNAIS ROUSE ("CLR")**

**A. Sufficiency of RICO Allegations**

**1. Sufficiency of Section 1962(c) Allegations**

To state a RICO claim, a plaintiff must allege that defendants "conduct[ed] or participat[ed] . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise may be "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Defendants cite various Seventh Circuit cases to support their contention that to properly allege an association-in-fact, there must be a structure and goals separate from the predicate acts themselves. However, this Circuit construes the enterprise element of RICO liberally; "[T]he language and the history [of RICO] suggest that Congress sought to

define the term as broadly as possible ..." *United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989) (en banc).

In *Moss v. Morgan Stanley,* 719 F.2d 5 (2d Cir.1983), this Circuit held that a RICO enterprise need not have an " 'economic goal .. apart from the commission of the predicate acts,' " but simply "an ascertainable structure distinct from the pattern of racketeering, and [which] cannot simply be the sum of the predicate acts." *Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, n. 5 (S.D.N.Y.1998). This Circuit has explicitly rejected the view that evidence offered to prove the "enterprise" and the "pattern of racketeering" must necessarily be distinct. *See id.*

■ Plaintiffs allege several alternative associations-in-fact comprised of various combinations of Sumitomo, Global, Winchester, CLR and the alleged Winchester–CLR joint venture. At this juncture in the proceedings, the agreement, dated May 20, 1991, between Winchester and CLR, which establishes a "group of companies ... for the purpose of carrying on, inter alia, the buying and selling of non-ferrous metals, the buying and selling of commodities in general, the buying and selling of foreign exchange whether in the spot or the futures market and introducing clients to CLR" (the "Winchester–CLR Agreement") alone serves as sufficient evidence of enterprise structure distinct from the alleged particular acts, which constitute the defendants' alleged pattern of racketeering. Plaintiffs have sufficiently alleged the existence of a RICO enterprise. At this time, this Court does not address plaintiffs' assertions regarding CLR's vicarious liability for acts of Winchester.

■ Moreover, to be subject to RICO liability, a defendant must have participated, directly or indirectly, in the operation or management of the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). As this Court has noted before, liability is not limited to those primarily responsible for an enterprise's affairs, in upper management, or who occupy a formal position in the enterprise, but may attach even to "lower-rung participants in the enterprise who are under the direction of upper management." *Id.* at 183–84, 113 S.Ct. 1163. However, "some part in directing the enterprise's affairs is required." *Id.* at 184, 113 S.Ct. 1163.

■ CLR contends that its role in the alleged enterprise was attenuated as it can show that it did not have knowledge of the underlying business of Sumitomo and Global and was thus unaware of the lack of commercial justification for the trades it cleared on their behalf. It further argues that its position as an "outsider" is determinative of the *Reves* test. However, "[o]nce a RICO enterprise is established, a defendant may be found liable even if he does not have specific knowledge of every member and component of the enterprise." *Mason Tenders District Council Pension Fund v. Messera,* 1996 WL 351250 at *6 (S.D.N.Y.1996) ("Whether or not this conduct is viewed as being at the core of the enterprise ...."). Furthermore, "[t]he RICO statute has been repeatedly construed to cover both insiders as well as those peripherally connected to a RICO enterprise, particularly where the "outsiders" are alleged to have engaged in kickbacks in order to influence the enterprise's decision." *Id. See also Azrielli v. Cohen Law Offices,* 21 F.3d 512, 514–15, 521 (2d Cir.1994) (Judge Kearse held that the district court should not have dismissed the § 1962(c) claim against defendant who served as "the middle person in [a] flip sale" of a building " 'by allowing his name to be used on the bogus contract and showing up at the closing.' ").

■ Plaintiffs' allegations regarding the profit and loss share agreement between CLR and Winchester and regarding the various forms of reciprocal assistance between Hamanaka or Sumitomo and CLR and Winchester are at a minimum sufficient to allege "substantial assistance on

the part of CLR in the overall manipulation scheme." *See Napoli v. United States,* 45 F.3d 680, 683 (2d Cir.) *cert. denied,* 514 U.S. 1084, 115 S.Ct. 1796, 131 L.Ed.2d 724 and 514 U.S. 1134, 115 S.Ct. 2015, 131 L.Ed.2d 1014 (1995). At this early stage, these allegations are sufficient to satisfy *Reves.*

■ Allegations of the existence of a RICO enterprise must meet only the "notice pleading" requirements of Fed.R.Civ. Pro. 8. *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134, 1144–45 (S.D.N.Y.1995); *Azurite Corp. v. Amster & Co.,* 730 F.Supp. 571 (S.D.N.Y.1990). At this time, nothing more than those allegations made herein is required of plaintiffs.

2. Sufficiency of Mail and Wire Fraud Allegations.

Under RICO, a "pattern of racketeering activity" consists of "at least two acts of racketeering activity" within a ten year period. *See* 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Among the predicate acts enumerated in § 1961(1) are any acts of mail fraud indictable under the federal mail fraud statute, 18 U.S.C. § 1341, and any acts of wire fraud indictable under the federal wire fraud statute, 18 U.S.C. § 1343.[1]

■ Plaintiffs allege that the Credit Lyonnais defendants have committed the predicate acts of mail fraud and wire fraud in carrying out an ongoing pattern of concerted activity to manipulate and artificially impact the price of copper and Comex futures and options contracts. The elements of a claim of mail or wire fraud are: (1) the existence of a scheme to defraud involving money or property; and (2) the use of the mails or wires in furtherance of the scheme. *See United States v. Trapilo,* 130 F.3d 547, 551–52 (2d Cir.1997); *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (citing *Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)).

In pleading a violation of the mail and wire fraud statutes, Rule 9(b) of the Federal Rules of Civil Procedure must be satisfied. *Mills,* 12 F.3d at 1176; *German de La Roche v. Calcagnini,* 95 Civ. 6322, 1997 WL 292108, at *7 (S.D.N.Y.1997). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

This Court has recognized the significance of Rule 9(b) in civil RICO actions. *See In re Sumitomo Copper Litigation,* 995 F.Supp. 451, 455 (S.D.N.Y.1998) (Pollack, J.). The rationale underlying a strict application of the pleading requirements in civil RICO actions is that simply bringing a RICO action against a defendant can unfairly brand him as a "racketeer." *Id.* However, while Rule 9(b) should be construed strictly in the context of civil RICO actions, it should not be exercised in such a manner as to obstruct even plaintiffs with valid claims from initiating such actions. Moreover, this Court has held that Rule 9(b) must still be read along with Rule 8(a), which requires a plaintiff to plead only a short, plain statement upon which he is entitled to relief. *See Connolly v. Havens,* 763 F.Supp. 6, 12 (S.D.N.Y.1991).

Defendant CLR's argument that plaintiffs' allegations fail to adequately allege wire or mail fraud because they have not

---

1. The wire fraud statute, 18 U.S.C. § 1343, provides in relevant part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both ..." The mail fraud statute, 18 U.S.C. § 1341, is similar to the wire fraud statute in all respects material to the present discussion.

alleged facts from which this Court could infer that CLR knew that the trades were not commercially justified is overshadowed by Rule 9(b)'s provision for general averment with regard to defendant's knowledge, especially when considered with the earlier noted principle that once a RICO enterprise is established, a defendant can be found liable even if he does not have specific knowledge of all its components. *See Mason Tenders,* 1996 WL 351250 at \*6.

This Court has held:

In cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves. *See Schmuck,* 489 U.S. at 715, 109 S.Ct. 1443. In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b) ... In complex civil RICO actions involving multiple defendants, therefore, Rule 9(b) does not require that temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity. *Spira[ v. Nick],* 876 F.Supp. [553] at 559[(S.D.N.Y.1995)]. In such cases, Rule 9(b) requires only that the plaintiff delineated, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme. *Madanes v. Madanes,* 981 F.Supp. 241, 254 (S.D.N.Y.1997); *Center Cadillac[, Inc. v. Bank Leumi Trust Co. of New York],* 808 F.Supp. [213] at 229 [(S.D.N.Y.1992)]; *Beth Israel Med. Ctr. v. Smith,* 576 F.Supp. 1061, 1070–71 (S.D.N.Y.1983).

*In Re Sumitomo,* 995 F.Supp. 451, 456 (S.D.N.Y.1998) (Pollack, J.).

■ In this action, the Complaint asserts a detailed conspiracy to manipulate and corner the market for physical copper and copper futures. "In light of the com-

plaint's allegations, it is certainly reasonable to infer that mail and/or telephone communications were used in furtherance of the defendants' scheme." *Beth Israel,* 576 F.Supp. at 1071. Furthermore, plaintiffs do plead specific predicate acts of mail and wire fraud in the Complaint, such as:

53. ... Hamanaka sent a fax to Threlkeld at his office in Vermont, asking him to verify fictitious trades which supposedly had occurred through DLT and CLR on September 17 and September 28, 1990, involving 127,505 MT of copper and more than $560 million.

105. The CLR–Winchester joint venture sent various warrant confirmations to Sumitomo during the Class Period. These included a false warrant confirmation, sent by Winchester (per Winchester Tokyo) in early August 1993 which materially overstated the amount of copper warrants which Sumitomo held with CLR on the close of business on July 31, 1993.

119. ... After "washing" the funds [referring to "the first cash infusions from the enterprise's put financing strategy"] through Sumitomo Hong Kong, Hamanaka transferred the October 4 funds directly to Merrill Lynch. For the second transaction, Hamanaka had J.P. Morgan wire the October 20 funds, directly to CLR, to CLR's account at Citibank in New York for the further credit of Sumitomo.

These and other similar allegations when viewed in light of the alleged overall conspiracy adequately meet the requirements of Rule 9(b). As such, at this juncture in the proceeding, this Court need not continue to address the issue of whether the existence of any agency relationship, between various entities allegedly involved in the conspiracy, was adequately pleaded so as to otherwise satisfy Rule 9(b), as asserted by plaintiffs and denied by defendant CLR.

3. Sufficiency of Proximate Cause Allegations

 Common law standards of proximate cause apply in RICO cases. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In *Laborers Local 17, Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (1999), the Second Circuit quotes *Holmes*, 503 U.S. at 268, 112 S.Ct. 1311, stating that under RICO, "[p]roximate causation is the requirement that there be 'some direct relation between the injury asserted and the injurious conduct alleged.'" While CLR suggests that this recent Second Circuit decision somehow sets forth new pleading requirements, this Court finds that it merely confirms pre-existing requirements. In *Laborers Local 17*, those who suffered the direct injury of the harm, smokers allegedly harmed by tobacco smoking, were not suing; rather labor unions were suing for damages consisting of the payments that their health and welfare funds had made to the individuals who had been hurt by tobacco smoking. 191 F.3d at 229–30. In contrast, in the present case, the plaintiffs consist of persons who were allegedly directly injured by their presumed reliance on artificial prices resulting from the enterprise's alleged manipulation of the market. If CLR is shown to be a member of the enterprise, it will also be responsible to plaintiffs for such injury. Again, for purposes of this motion, all inferences are drawn in favor of plaintiffs, who will be afforded the opportunity to further prove their allegations of proximate causation. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993).

4. Sufficiency of Section 1962(d) Allegations

Defendant CLR asserts that the elements of a RICO conspiracy claim require plaintiffs to plead that CLR agreed to commit predicate acts prohibited by RICO and that CLR knew those acts were part of a pattern of illegal racketeering activity.

While CLR cites authority from this District, the Supreme Court's 1997 decision in *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352, is controlling. The Supreme Court held that plaintiffs need only allege that CLR "knew of and agreed to facilitate the scheme." *Id.* at 478.

> There is no requirement of some overt act or specific act in the [RICO] statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.' § 371.
>
> \* \* \* \* \* \*
>
> A [RICO] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor ... One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a [RICO] conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, and so punishable in itself.

*Salinas*, 118 S.Ct. at 476–77.

Although the Second Circuit has used "predicate acts" language, it has expanded on the principle as viewed in other circuits and follows *Salinas*. Chief Judge Winter held:

> A RICO conspiracy charge "is proven if the defendant 'embraced the objective of the alleged conspiracy,' and agreed to commit ... predicate acts in furtherance thereof." *Id.* (quoting *United States v. Neapolitan*, 791 F.2d 489, 495 (7th Cir. 1986)). Assuming that a RICO enterprise exists, the government must prove only "that the defendant[s] ... know the general nature of the conspiracy and that the conspiracy extends beyond [their] individual role[s]." *United States*

*v. Rastelli,* 870 F.2d 822, 828 (2d Cir. 1989). In applying this analysis, we need inquire only whether an alleged conspirator knew what the other conspirators "were up to" or whether the situation would logically lead an alleged conspirator "to suspect he was part of a larger enterprise." *Viola,* 35 F.3d at 44–45.; *see also Salinas,* 118 S.Ct. at 478.

*U.S. v. Zichettello,* 208 F.3d 72 (2d Cir. 2000).

■■■ Plaintiffs allege that CLR knew about and agreed to facilitate the conspiracy to defraud and manipulate the copper futures market. Specifically, plaintiffs allege that CLR engaged in conduct which exceeded ordinary financial services and extended beyond brokerage and banking industry customs, was sanctioned by the LME for its activities on behalf of Sumitomo, joined the conspiracy by improperly concealing from Sumitomo's accounting division and Treasury department the line of credit Hamanaka was using to fund the allegedly manipulative transactions, and effectively acted as Hamanaka's partner. CLR concedes that the allegations against the defendants other than itself and CL, if proven, suffice to show that a RICO conspiracy did exist. As such the allegations of CLR's involvement in the conspiracy need not be great. "Once a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming." *United States v. Diaz,* 176 F.3d 52, 97 (2d Cir.1999) (quoting *United States v. Amato,* 15 F.3d 230, 235 (2d Cir.1994)). Plaintiffs § 1962(d) allegations suffice to satisfy *Salinas* and corresponding authority from this Circuit.

## B. Statute of Limitations

### 1. The Standard

■■■ Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), The limitations period begins to run when a plaintiff knew or should have known of his injury. *Rotella v. Wood,* —— U.S. ——, ——, 120 S.Ct. 1075, 1080, 145 L.Ed.2d 1047 (2000). The Supreme Court has eliminated the injury and pattern discovery rule, under which a civil RICO claim accrues only when the claimant discovers, or should discover, an injury and a pattern of RICO activity, stating that it did not want to "parlay the necessary complexity of RICO into worse trouble in applying its limitations rule." *Id.* at 1080, 1083. However, the Court added that, "[i]n rejecting pattern discovery as a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, *see Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946), and where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty, complementing Federal Rule of Civil Procedure 11(b)(3)."

### 2. The Injury

The first step in the statute of limitations analysis is to determine when the plaintiffs sustained the alleged injury for which they seek redress. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988). Plaintiffs allege that as a result of the alleged conspiracy and manipulative enterprise, Class members suffered economic injury from artificially high and noncompetitive copper prices throughout the Class Period, June 24, 1993 through June 15, 1996.

### 3. Inquiry or Actual Notice of the Injury

We then determine when they discovered or should have discovered the injury and begin the four-year statute of limitations period at that point. *Id.*

Plaintiffs allege that they did not receive inquiry notice nor learn of the factual basis for the alleged RICO violations and plaintiffs' alleged injuries suffered therefrom

until June 14, 1996, when Sumitomo first reported the uncommercial positions and losses, accompanied by details of manipulation. Plaintiffs also allege that the CFTC did not begin to become aware of the material facts constituting the present claims until sometime in April of 1996 and that Comex did not issue any public statements addressing the manipulation of copper future prices until after June 14, 1996. CLR argues that this Court should find that plaintiffs were on inquiry notice as of such time as the LME's October 11, 1993 public action combined with 1993 news reports regarding alleged copper price manipulation by Sumitomo and others served as "storm warnings" that wrongdoing may have been committed. *Salinger v. Projectavision, Inc.,* 934 F.Supp. 1402, 1408 (S.D.N.Y.1996). *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983) ("Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of that fraud will be imputed to him."). *In re Ames Department Stores Inc. Note Litigation,* 991 F.2d 968, 979 (2d Cir.1993). Plaintiffs allege, however, that the sanction was not publicly characterized as a fine for price manipulation and that CLR publicly denied intending any "undue" influence over prices thereby defeating a claim of inquiry notice. Plaintiffs assert that despite any public notice, the statute of limitations should be tolled due to defendants' fraudulent concealment of the alleged manipulative scheme.

### 4. Fraudulent Concealment as a Tolling Exception

 The doctrine of fraudulent concealment was designed to prevent a party from "concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it." *New York v.*

*Hendrickson Brothers, Inc.,* 840 F.2d 1065, 1083 (2d Cir.), *cert. denied,* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988) (quoting *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874)). Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if plaintiffs prove three elements: (1) wrongful concealment by CLR, (2) which prevented plaintiffs' discovery of the nature of the claim within the limitations period, and (3) plaintiffs' ignorance was not attributable to a lack of diligence on their part in pursuing the discovery of the claim. *Hendrickson Bros.,* 840 F.2d at 1083. *Butala v. Agashiwala,* 916 F.Supp. 314, 319 (S.D.N.Y.1996).

Plaintiffs allege that the defendants fraudulently misrepresented and concealed material facts from at least June 24, 1993 to the time of the Complaint. Specifically, plaintiffs allege that (i) during 1993, CLR affirmatively negotiated a deal with the LME to limit the public statements of both about what had occurred during the Summer of 1993; (ii) CLR affirmatively and falsely issued a public denial of any belief on CLR's part that even any "undue influence" could have been exercised in the market; (iii) the Credit Lyonnais defendants, in consideration for an immediate $59 million payment agreed to conceal and did conceal from the Sumitomo Treasury Department and Accounting Division CL's financing and creation of extraordinary manipulative trades for Hamanaka; and (iv) the Credit Lyonnais defendants provided secret code names to transactions.

CLR's various alleged agreements and dealings so as to conceal the cause of action from the public and others in a potential position to act could constitute fraudulent concealment as interpreted by the Courts. *See Meridien Int'l Bank Ltd. v. The Government of Republic of Liberia,* 23 F.Supp.2d 439, 447 (S.D.N.Y.1998) (RICO claims pleaded adequately to be equitably tolled where pleadings include allegations of bribery of top individuals in

potential position to act.) *In re System Software Associates, Inc. Securities Litigation,* 2000 WL 283099 at *11 (N.D.Ill. 2000) (Newspaper articles did not provide constructive notice to securities plaintiff in circumstance where "[d]efendants fail[ed] to acknowledge ... their own emphatic details of any improprieties published in these very same articles.")

 "The question of constructive knowledge and inquiry notice may be one for the trier of fact and therefore ill-suited for determination on a motion to dismiss ... Nonetheless, the test is an objective one and dismissal is appropriate when the facts from which knowledge may be imputed are clear from pleadings and the public disclosures themselves." *Salinger,* 934 F.Supp. at 1408; *In re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, (2d. Cir.1998) (holding that the question of inquiry notice need not be left to a finder of fact.) *Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 352 n. 3 (2d Cir.1993). This Court has previously held that "[s]ince issues of constructive knowledge depend on inferences drawn from the facts of each particular case, summary judgment is often inappropriate on issues on inquiry notice. In fact, Southern District courts have variously described defendants' burden in this regard as "extraordinary" and appropriate only in "extreme circumstances." " *In re Prudential Securities Inc. Ltd. Partnerships Litigation,* 930 F.Supp. 68, 76 (S.D.N.Y.1996). This same logic extends to consideration of the issues of inquiry notice and fraudulent concealment with respect to motions to dismiss. Plaintiffs' allegations suffice to preclude dismissal on statute of limitations grounds.

## C. Common Law Fraud Claim

As this Court finds that plaintiffs have sufficiently alleged federal causes of action under RICO, it maintains its supplemental jurisdiction over plaintiffs' remaining state law claims. *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 447–48 (2d Cir.1998).

## II. SUFFICIENCY OF ALLEGATIONS AGAINST CREDIT LYONNAIS, S.A. ("C.L.")

Credit Lyonnais, S.A. ("CL") is a corporation which is the ultimate holding company or parent of defendant CLR.

## A. Sufficiency of RICO Allegations

### 1. Sufficiency of "Enterprise" Allegations

Plaintiffs have sufficiently pled the existence of a RICO enterprise for purposes of the notice pleading requirements. As discussed with regard to CLR's association therewith, a defendant must have participated, directly or indirectly, in the operation or management of the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

Plaintiffs allege that CL directly participated in the alleged enterprise by: (i) assuming various CLR liabilities, thus enabling CLR to extend credit lines to Hamanaka's division; (ii) guaranteeing credit lines extended by CLR to Sumitomo; (iii) concealing from the Accounting Division and Treasury Department of Sumitomo the credit lines that CLR had extended to Sumitomo; and (iv) allegedly altering its normal way of doing business, creating special procedures and actions. Like its codefendant CLR, CL asserts that its role in the alleged enterprise was attenuated as it can demonstrate that it did not have knowledge of the underlying business of Sumitomo and Global and CL thus was unapprised of the lack of commercial grounds for the trades which it allegedly enabled its indirect subsidiary CLR to clear.

 CL's violation of its own rules in assisting the alleged enterprise does not signify direct participation in the alleged enterprise's manipulative scheme. *Redtail Leasing, Inc. v. Bellezza,* 1997 WL 603496 at *5 (S.D.N.Y.1997) ("A defendant does not "direct" an enterprise's affairs under § 1962(c) merely by engaging in wrongful

conduct that assists the enterprise."). Furthermore, CL could argue its financing measures pertained simply to its business relationship with CLR. *Industrial Bank of Latvia v. Baltic Fin. Corp.*, 1994 WL 286162 at *3 (S.D.N.Y.1994) ("That [defendant] Bank provided banking services— even with knowledge of the fraud—is not enough to state a claim under § 1962(c).").

■ However, Plaintiff's allegation that CL agreed to knowingly conceal its financing of large manipulative positions from the accounting division and the Treasury Department of Sumitomo, which plaintiffs further allege is evidenced by an internal memo sent to this District and elsewhere, creates potential questions of fact which must be construed in plaintiffs' favor in considering this motion to dismiss. As such, plaintiffs' allegations concerning CL's direct participation satisfies the pleading requirements for *Reves* at this juncture.

**2. Sufficiency of Vicarious Liability Allegations**

"A corporation can act only through its agents, and the 'acts of individuals on [the corporation's] behalf may be properly chargeable to it.'" *United States v. Paccione*, 949 F.2d 1183 (2d Cir.1991), *cert. denied sub nom. Vulpis v. United States*, 505 U.S. 1220, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992) (quoting *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 99 (2d Cir.), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983)). "RICO liability may be imputed to a corporation where an agent acts on behalf of a corporate entity with that entity's knowledge." *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F.Supp. 545, 568 (E.D.N.Y. 1998).

■ The issue of whether CL can be considered vicariously liable under RICO should be informed by the standards under comparable federal substantive law, here the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq. ("the CEA"). CEA standards provide for such vicarious liability. *Rosenthal & Co. v. C.F.T.C.*, 802 F.2d 963, 967 (7th Cir.1986) ("there is no counterpart in the securities laws to Section 2(a)(1) of the Commodity Exchange Act, that is, no provision creating liability on the basis of respondeat superior"); *C.F.T.C. v. Commodities Fluctuations Systems, Inc.*, 583 F.Supp. 1382, 1384–85 (S.D.N.Y.1984) (violations of salespersons would be imputed not only to their employer but also to a clearing firm). Plaintiffs can argue imputation of CLR's alleged involvement in the scheme of manipulation to CL. As such, plaintiffs' allegations suffice at this time.

**3. Sufficiency of Proximate Cause Allegations**

While "[m]erely pleading a close relationship with another entity that is alleged to have made particular statements is insufficient to satisfy Rule 9(b)," *Daly v. Castro Llanes*, 30 F.Supp.2d 407, 414 (S.D.N.Y.1998), plaintiffs' allegations that CL directly agreed to conceal financing from Sumitomo constitutes a specific allegation of fraudulent activity which contributed to the overall economic injuries suffered by the Class Members.

**B. Sufficiency of Allegations of Aiding and Abetting Common Law Fraud.**

As mentioned with regard to plaintiffs' allegations against CLR, "[i]n cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves. *See Schmuck*, 489 U.S. at 715, 109 S.Ct. 1443. In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *In Re Sumitomo*, 995 F.Supp. 451, 456 (S.D.N.Y.1998). Defendants' alleged manipulation of the copper prices would constitute a "master plan to defraud." As such, Plaintiff need only plead details of

the overall conspiracy at this time to satisfy Rule 9(b).

### Conclusion

The plaintiffs sufficiently state a claim under RICO and satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. The motions to dismiss the Sixth Amended Consolidated Class Action Complaint against CLR and against CL are denied.

SO ORDERED.