**ARIZONA PREMIUM FINANCE, INC. and Westchester Premium Acceptance Corp., Plaintiffs,**

v.

**Anthony BIELLI, Arthur M. Bielli, Arthur M. Bielli & Company of New York, Inc., TBI International Brokers, Ltd., and Global Insurance Brokerage, Inc., Defendants.**

No. 99 CV 5595 (ADS).

United States District Court, E.D. New York.

Dec. 21, 1999.

Carlucci & Legum, LLP, Mineola, NY, Steven G. Legum, of counsel, for plaintiffs.

Joyce C. London, New York City, for defendant Anthony Bielli.

James C. Neville, Port Washington, NY, for defendant Arthur M. Bielli, Arthur M. Bielli & Co., New York, Inc., Tony Bielli & Co., New York, Invc., TBI International Insurance Brokers Ltd.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs Arizona Premium Finance, Inc. ("Arizona") and Westchester Premium Acceptance Corp. ("Westchester"), finance the payments of insurance premiums for various businesses. The two individually named defendants, Anthony Bielli and Arthur Bielli, are both licensed insurance brokers. The four corporate defendants, including Arthur M. Bielli & Company of New York, Inc., Tony Bielli & Co. of New York, Invc., TBI International Insurance Brokers Ltd., and Global Insurance Brokerage Inc. are insurance brokerage agencies.

The plaintiffs claim that the defendants forwarded to them fraudulent premium finance agreements. The finance agreements are alleged to have contained false statements including non-existent insurance policies, fictitious insureds, forged signatures, incorrect policy information and incorrect inception dates of the policies. Based upon these alleged fraudulent premium finance agreements, the plaintiffs contend that they paid in excess of $1 million to the defendants which money was intended to be used solely for the purpose of financing the insurance policies as set forth in the agreements. The plaintiffs contend that instead of financing insurance, the plaintiffs contend that the defendants converted the funds for their own use and proceeded to secrete the assets which they fraudulently obtained.

Presently before the Court is defendant Anthony Bielli's motion to dismiss the complaint pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). In addition, defendants Arthur M. Bielli, Arthur M. Bielli & Co. of New York, Inc., Tony Bielli & Co. of New York, Invc., and TBI International Insurance Brokers Ltd. join in Anthony Bielli's motion to dismiss. Global Insurance Brokerage Inc. has not similarly moved.

## I. BACKGROUND

The following facts are taken from the plaintiffs' complaint, filed on September 13, 1999. In 1998, the defendants began transacting business with the plaintiff Arizona. At that time, the defendants forwarded to Arizona what they represented to be premium finance agreements seeking financing for insurance that they were placing on behalf of their clients. In 1999, the defendants began transacting business with Westchester, and similarly forwarded it premium finance agreements seeking financing for their insurance clients.

The plaintiffs assert that the premium finance agreements contained false and fraudulent information including non existent insurance policies, inflated premiums, incorrect insurance carriers, false and ficticious names of insureds, forged signatures of insureds, incorrect policy information, incorrect inception dates of insurance policies and miscellaneous incorrect premium and policy information. Based upon the fraudulent information, the plaintiffs, who were licensed lending institutions pursuant to the New York Banking Law, advanced large sums of money to the defendants for what they believed were financed insurance premiums. The plaintiffs contend that they forwarded sums in excess of $1

million to the defendants for the purpose of financing insurance policies, but unknown to them, the funds were instead diverted for their own personal use.

The plaintiffs' complaint, consisting of 41 pages and 376 paragraphs refers to approximately 45 separate fraudulent premium finance agreements. By way of example, the plaintiffs allege that on separate occasions the defendants forwarded them premium finance agreements listing the entity "TAB Enterprises" as the insured. The complaint states that TAB Enterprises was formed in 1986 and dissolved in 1991, at which time the defendant Arthur M. Bielli was the president of the corporation. The complaint further claims that at the time of the submission of the premium finance agreement, Arthur Bielli knew that the corporation did not exist, had no assets and thus had no need to acquire insurance. Based upon the representations in the premium finance agreement, the plaintiffs forwarded the defendants approximately $110,000. Instead of this money going to Lloyds of London, as represented by the defendants, it was diverted for the personal use of the defendants. In similar detail, the complaint goes on to describe numerous other transactions where the defendants forwarded fraudulent premium finance agreements and received large sums of money that were not used to finance insurance policies, but were diverted for the personal use of the defendants.

As a result of this conduct, the plaintiffs filed an eight count complaint alleging violations of the civil RICO statute, conversion and breach of contract.

## II. DISCUSSION

### A. *Fed.R.Civ.P. 12(b)(6)*

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Northrop v. Hoffman of Simsbury, Inc.,*

134 F.3d 41, 44 (2d Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)); *see also International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985), and in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true, *see Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 140 (2d Cir. 1999); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir. 1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *LaBounty,* 933 F.2d at 123; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d.Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed

as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 (2d Cir.1976) [per curiam]).

### B. *Fed.R.Civ.P. 9(b)*

When pleading a claim for fraud or misrepresentation, the plaintiff must aver the alleged fraudulent acts with particularity as required by Fed.R.Civ.P. 9(b). *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). Although "knowledge" and "condition of mind" may be stated in general terms (*see* Fed.R.Civ.P. 9[b] ), the circumstances surrounding the alleged fraud must be pled with particularity. *See Moore v. Painewebber, Inc.,* 189 F.3d 165, 173 (2d Cir.1999); *Farley v. Baird, Patrick & Co.,* 750 F.Supp. 1209, 1217 (S.D.N.Y.1990) (quoting *Eickhorst v. American Completion & Dev. Corp.,* 706 F.Supp. 1087, 1091 (S.D.N.Y.1989)).

■ To satisfy the particularity requirement of Rule 9(b), the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore,* 189 F.3d at 173 (quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 [2d Cir.1989] ). Specifically, "the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990).

■ Facts must be pled with sufficient particularity to support a "strong inference" that the defendant possessed the requisite fraudulent intent or scienter. *See Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1128 (2d Cir.1994). Moreover, such allegations may not merely rest upon statements based on "information and belief." *See Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) (citations omitted).

■ The particularity requirement of Rule 9(b) is designed to serve several important policies, such as to afford the defendant fair notice of the claims, to safeguard the defendant's reputation and also to inhibit the institution of "strike suits." *See Campaniello Imports v. Saporiti Italia S.p.A.,* 117 F.3d 655, 663 (2d Cir.1997).

The defendants essentially make three arguments in support of their motion to dismiss. First, the defendants argue that the complaint is deficient under Rule 9(b) as it fails to specify the time, place, speaker and content of the alleged misrepresentations. Second, the defendants submit that the complaint fails to plead the proper elements of a RICO violation and a RICO conspiracy. Finally, the defendants claim that the complaint fails to plead the elements of conversion and breach of contract.

■ The Court is satisfied that the complaint provides the defendants with fair notice of the claims so as to afford them the opportunity to answer the complaint and prepare for trial. The complaint details the operation of the premium finance industry; the history and relationship between the plaintiffs and the defendants; and the alleged continuing scheme by the defendants to defraud the plaintiffs. While the complaint does not specifically identify each defendant who prepared the approximate 45 premium finance agreements and who made the alleged fraudulent representations, at this stage in the

litigation it is reasonable to believe that it would be difficult for the plaintiffs to have such knowledge. The Court must afford the plaintiffs some latitude with regard to the specificity of the complaint where the specific defendant who made certain misrepresentations is apparently not known. The complaint does provide the name of each purported "company" which the defendants allegedly proffered as the beneficiary of the premium finance agreement. As such, the Court is satisfied that the makers of the alleged fraudulent statements, namely the defendants, can adequately interpose an answer and prepare for trial as this information is within their knowledge.

### C. As to the Civil Rico Cause of Action

██ The defendants claim that the complaint fails to plead the elements of a RICO violation. The threshold pleading requirements of a private action under RICO, Section 1962, were set forth by the Second Circuit in *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), as follows:

> To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as "criminal RICO." In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.... Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden—*i.e.*, invoking RICO's civil remedies of treble damages, attorneys fees and costs.... To satisfy this latter bur-

den, plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." (citations omitted).

*See also Pinnacle Consultants v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir.1996) (discussing the standards). Section 1962 prohibits, under subsections (a) through (d), the following: (a) the use of income "derived ... from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce; (b) the acquisition of any interest in or control of such an enterprise "through a pattern or racketeering activity"; (c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity"; and (d) conspiring to do any of the above. 18 U.S.C. §§ 1962(a)–(d); *see also GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 465 (2d Cir.1995), *cert. denied*, 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996).

██ To establish such a pattern of racketeering activity, "a plaintiff must plead at least two predicate acts, show that the acts are related and that they amount to, or pose a threat of, continuing criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). RICO is aimed at "racketeering activity," which the statute defines, in relevant part, as certain acts indictable under Federal law, including mail and wire fraud, and violations of the Hobbs Act. 18 U.S.C. § 1961(1)(B).

██ A "pattern" requires at least two acts of "racketeering activity," occurring within ten years of each other. *See* 18 U.S.C. § 1961(5). To reiterate, the term "racketeering activity" refers to the predicate acts necessary to sustain a RICO claim and include mail fraud, wire fraud, and the Hobbs Act. *See* 18 U.S.C. § 1961(1). Those predicate acts must be crimes under state or federal law. *United States v. Angelilli*, 660 F.2d 23 (2d Cir. 1981), *cert. denied*, 455 U.S. 910, 102 S.Ct.

1258, 71 L.Ed.2d 449, *rehearing denied,* 456 U.S. 939, 102 S.Ct. 1998, 72 L.Ed.2d 460 (1982); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 995 (E.D.N.Y.1995).

■ Both the Supreme Court and Second Circuit have held that an allegation of two acts of "racketeering activity,"without more, is not sufficient to establish a pattern. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. at 238–44, 109 S.Ct. 2893; *United States v. Indelicato,* 865 F.2d 1370, 1381 (2d Cir.) (en banc ), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). To constitute a "pattern" of racketeering activity, the predicate acts must be related and constitute a threat of continued racketeering activity and this determination is to be made on a case-by-case basis. *H.J. Inc.,* 492 U.S. at 238–44, 109 S.Ct. 2893; *see also United States v. Alkins,* 925 F.2d 541, 551 (2d Cir.1991) (predicate acts must be related and amount to or pose a threat of continued criminal activity). In addressing the determination about a "pattern" of racketeering activity the Second Circuit noted that "[a]n interrelationship between acts, suggesting the existence of a pattern, may be established ... [by] proof of their temporal proximity, or common goals, or similarity of methods, or repetitions." *Indelicato,* 865 F.2d at 1382.

The plaintiffs' amended complaint alleges that the predicate acts in support of the RICO claim are the defendants violations of the mail and wire fraud statutes. The mail fraud statute, 18 U.S.C. § 1341, provides, in relevant part, that a person is guilty of mail fraud if:

having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, [the person] places in any post office or authorized depository for mail matter, any matter

or thing whatever to be sent or delivered by the Postal Service.

The crux of mail fraud and wire fraud is "an intent to defraud." *United States v. Bouyea,* 152 F.3d 192, 194 (2d Cir.1998); *U.S. v. Gabriel,* 125 F.3d 89, 96 (2d Cir. 1997). To establish an intent to defraud, the plaintiffs must adequately allege that the "defendants contemplated some actual harm or injury to their victims. Only a showing of intended harm will satisfy the element of fraudulent intent." *United States v. Dinome,* 86 F.3d 277, 283 (2d Cir.1996) (mail fraud and wire fraud) (quoting *United States v. Starr,* 816 F.2d 94, 98 (2d Cir.1987)); *see also In re Registry Publishing,* 68 F.3d at 580 ("In order to establish that the defendant acted with an intent to defraud, the Government must show that some actual harm or injury was contemplated by the schemer.") (internal quotation marks omitted); *United States v. D'Amato,* 39 F.3d 1249, 1257 (2d Cir. 1994).

In a similar vein, the wire fraud statute, 18 U.S.C. § 1341, requires a scheme devised "to defraud, or for obtaining money or property by means of false or fraudulent pretenses, or promises," and the use of interstate wires or communications to execute the scheme. 18 U.S.C. § 1343.

■ Without stating the numerous paragraphs in the plaintiffs 42 page complaint of the RICO cause of action, the Court will summarize paragraphs 150–178, 339 and 360 which illustrate those acts which are alleged to have been violations of the RICO statute:

Defendants forwarded to Westchester premium finance agreements with the name, Rain or Shine set forth thereon as the insured.

[O]ne or both of the individual defendants forged the signature on such premium finance agreement.

[T]here were on or more inaccurate and incorrect items of information on the premium finance agreement.... The premium amount was incorrect, the

name of the insurer was incorrect, the name of the insured was incorrect, the inception date of the policy was incorrect, the listed insured did not exist, there was no insurance policy issued by any insurance carrier, and/or there was multiple financing of the financed policies.

When the premium finance agreement was accepted and funded, the sums forwarded to the defendants by Westchester were not forwarded to their intended recipient, to wit: the insurance carrier but, rather, retained by the defendants and converted by them.

\*     \*     \*     \*     \*     \*

There remains due and on the aforesaid account the sum of $4,477.98.

\*     \*     \*     \*     \*     \*

The pattern of racketeering activity began years ago. It had its first effect upon Arizona in 1998 when defendants submitted fraudulent premium finance agreements and thereby obtained funds ostensibly to finance insurance but, in reality, to be retained and embezzled by the defendants. The scheme continued with respect to Arizona until Arizona learned of the bogus nature of the premium finance agreements and ceased forwarding funds to the defendants. But for the fact that Arizona learned of the bogus nature of the premium finance agreements forwarded to it via the United States mails, upon information and belief, the scheme to defraud would be continuing against it.

The pattern of racketeering activity began many years ago. It had its first effect upon Westchester in 1998 when defendants submitted fraudulent premium finance agreements and thereby obtained funds ostensibly to finance insurance but, in reality, to be retained and embezzled by the defendants. The scheme continued with respect to Westchester until Westchester learned of the bogus nature of the premium finance agreements and ceased forwarding

funds to the defendants. But for the fact that Arizona learned of the bogus nature of the premium finance agreements forwarded to it via the United States mails, upon information and belief, the scheme to defraud would be continuing against it.

The Court is satisfied that these allegations in conjunction with many other claims contained within the plaintiffs' complaint comply with Rule 9(b) and are sufficient pleadings under RICO. Based upon these allegations, the defendants have been given adequate notice so that they can answer the complaint and prepare to defend the case at trial. Similarly, accepting the facts as true as alleged in the complaint, as the Court must in a motion to dismiss, the Court is satisfied that the facts supporting the allegation of a RICO conspiracy are legally sufficient. Accordingly, the defendants motion to dismiss the RICO claim is denied.

### D.    *Conversion and Breach of Contract*

Finally, the defendants allege that the complaint fails to plead the elements of conversion and breach of contract due to the failure to comply with Rule 9(b). Specifically, the defendants argue that "the Complaint's failure to comply with Rule 9(b) in detailing the fraud undermines also the Conversion Count." Similarly, the defendants submit that "the failure to comply with Rule 9(b) undercuts the allegation . . . that the information was not truthful [therefore] [t]he breach of contract claim must be dismissed."

As the Court has previously determined that the complaint complies with Rule 9(b), their contention that the plaintiffs failure to comply with Rule 9(b) undermines the claims of conversion and breach of contract lack merit. In addition, for purposes of surviving a motion to dismiss, the Court finds that the plaintiffs have adequately set forth the claims of conversion and breach of contract. As such, the defendants' motion to dismiss the claims of conversion and breach of contract is denied.

## III. CONCLUSION

Having reviewed the parties' submissions and for the reasons set forth above, it is hereby

**ORDERED,** that Anthony Bielli's motion to dismiss the amended complaint is **DENIED;** and it is further

**ORDERED,** that Arthur M. Bielli, Arthur M. Bielli & Co. of New York, Inc., Tony Bielli & Co. of New York, Invc., and TBI International Insurance Brokers Ltd. motion to dismiss the complaint is **DENIED;** and it is further

**ORDERED,** that as previously directed, all parties are to continue to proceed with discovery on an expedited basis and appear for jury selection on January 18, 1999 at 9:00 AM.

**SO ORDERED.**