**Cira CALABRESE, Mel Gevanter, Anthony Fiore, Stewart Kalter, Ralph Reel, Sylvia Howell–Fridie, Steven Schiff and those similarly situated, Plaintiffs,**

v.

**CSC HOLDINGS, INC., a/k/a Cablevision, Shaun K. Hogan, Daniel J. Lefkowitz, Wayne R. Louis, Patrick J. Sullivan, James F. Magee, Robert Astarita, Amy Groveman, and Lefkowitz, Louis & Sullivan, L.L.P., Defendants.**

No. 2:02–CV–05171–JS–ARL.

United States District Court,
E.D. New York.

Aug. 13, 2003.

Harry J. Binder, Binder & Binder P.C., Ronkonkama, NY, for Plaintiffs.

George C. Pratt, James M. Wicks, Jennifer M. Mone, Farrell Fritz, P.C., Uniondale, NY, for Defendants, CSC Holdings, Inc., James F. Magee, Robert Astarita and Amy Groveman.

Marian C. Rice, Matthew K. Flanagan, L'Abbate Balkan Colavita & Contini, L.L.P., Garden City, NY, for Defendants, Shaun Hogan, Daniel Lefkowitz, Wayne Louis, Patrick Sullivan and Lefkowitz, Louis & Sullivan, L.L.P.

### MEMORANDUM & ORDER

SEYBERT, District Judge.

Plaintiffs Cira Calabrese ("Calabrese"), Mel Gevanter ("Gevanter"), Anthony Fiore ("Fiore"), Stewart Kalter ("Kalter"), Ralph Reel ("Reel"), Sylvia Howell–Fridie ("Howell–Fridie") and Steven Schiff ("Schiff") (collectively, "Plaintiffs") commenced this putative class-action against the Defendants on October 23, 2002. The Defendants are: CSC Holdings, Inc., a/k/a Cablevision ("CSC"), James F. Magee ("Magee"), Robert Astarita ("Astarita") and Amy Groveman ("Groveman"), (collectively the "CSC Defendants"), and Shaun K. Hogan ("Hogan"), Daniel J. Lefkowitz ("Daniel Lefkowitz"), Wayne R. Louis ("Louis"), Patrick J. Sullivan ("Sullivan") and Lefkowitz, Louis & Sullivan, L.L.P. ("Lefkowitz Firm"), (collectively the "Lefkowitz Defendants") (the CSC Defendants and the Lefkowitz Defendants will be referred to collectively as the "Defendants"). Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, as well as

state law claims of fraud, unjust enrichment and deceptive business practices under New York General Business Law § 349. Plaintiffs seek compensatory and punitive damages, attorney's fees and injunctive relief.

Pending before this Court are Defendants' motions to dismiss the action on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth herein, Defendants' motions are GRANTED, in part, and DENIED, in part.

## BACKGROUND

The facts, as alleged by Plaintiffs, and regarded as true for the purposes of this motion, are as follows.

### I *The Scheme*

Plaintiffs are individuals residing in New York who subscribe to cable television service provided by Defendant CSC. Defendant CSC is a corporation organized and existing under the laws of the state of Delaware, is registered to do business in the state of New York and has its principal place of business in Bethpage, New York. Defendant Astarita is the head of CSC's security operations. Defendant Magee is Vice President of Security for the New York Metropolitan area for CSC. Defendant Groveman is Senior Counsel for Cablevision Systems. Defendant the Lefkowitz Firm is a limited liability partnership organized under the state of New York, and is located in Jericho, New York. Defendants Hogan, Daniel Lefkowitz, Louis and Sullivan are partners of the Lefkowitz Firm.

CSC operates cable television systems pursuant to franchises awarded to it by various municipalities. CSC's security department is responsible for curbing cable theft. CSC employs former law enforcement officers to manage its security operations, including Astarita and Magee. CSC also hires outside private investigators to help conduct security operations. CSC's investigators are directed to purchase "pirate" cable boxes from businesses. Pirate boxes enable users to intercept and watch CSC's cable programming without having to pay the company. CSC conducts surveillance of these businesses in the hopes of identifying the purchasers of the pirate boxes. Plaintiffs allege that CSC then uses its law enforcement connections to persuade the authorities to "bust" the businesses that distribute the pirate boxes. Plaintiffs further claim that once the law enforcement authorities conclude their investigation, the businesses are turned over to CSC for civil prosecution. At that time, CSC obtains a list of subscribers that ordered pirate boxes from the "busted" business.

Plaintiffs admit that CSC conducts a thorough investigation when dealing with businesses, but contend that such an investigation does not occur when allegations are made against individuals. Plaintiffs argue that CSC does not conduct an investigation when accusing individuals because CSC believes that these individuals cannot afford to defend the lawsuits and that the cost of retaining counsel would most likely exceed the settlement demands.

Having obtained the customer lists from the "busted" business, CSC mails letters to the list of individuals that ordered pirate boxes. The letters accuse the individuals of buying pirate boxes and threaten to sue them unless they pay CSC's settlement demands. CSC also telephones the subscribers making similar demands for money. The letters state that the subscriber has purchased a pirate box and that "[u]se of a cable television decoder(s) [pirate box] on Cablevision's television system without Cablevision's authorization is a violation of both federal and state law." Plaintiffs ar-

gue that the letters are intentionally ambiguous as to whether or not the mere order or purchase of a pirate box is sufficient to constitute a violation of the Communications Act. The letters also threaten that unless payment is made, the subscriber's cable service will be disconnected. Therefore, since it is not economically advantageous for individuals to contest CSC's accusations, Plaintiffs claim that individuals are forced to pay the demands whether or not they are guilty.

If the subscribers refuse to pay CSC, the company turns the matter over to the Lefkowitz Defendants. Plaintiffs allege that CSC's in-house attorneys, including Defendant Groveman, authorize the Lefkowitz Defendants to pursue legal action against the subscribers. The Lefkowitz Defendants then mail letters to the subscribers similar to those initially mailed by CSC. These letters are accompanied by "Settlement Agreements." The Settlement Agreements state: "WHEREAS, [the subscriber] without making any admissions and specifically denying Cablevision's allegations, has determined that future litigation of any and all of Cablevision's claims are not in his/her interests, and instead desires to enter into this Agreement." In addition, the Settlement Agreements require subscribers to release CSC from any liability that could arise from their allegations. If a subscriber refuses to pay these demands, the Lefkowitz Defendants file suit without conducting an investigation.

## II Individual Allegations

### A Cira Calabrese

The relevant facts pertaining to each of the individual Plaintiffs are similar. Calabrese was accused of cable theft by CSC. Without conducting an investigation as to whether she used a decoder, CSC mailed her a letter demanding $3,000 for using an unauthorized decoder. When Calabrese refused to pay CSC, the matter was turned over to the Lefkowitz Defendants. The Lefkowitz Defendants mailed a similar letter to Calabrese, accompanied by a Settlement Agreement. When Calabrese continued to refuse to pay, the Lefkowitz Defendants filed suit against her.

Plaintiffs claim that CSC admitted that it failed to conduct any investigation of Calabrese before accusing her of stealing cable programming and that its investigators made no attempts to learn if she was actually intercepting cable programming or even possessed a pirate box. Plaintiffs further allege that the Lefkowtiz Defendants did not determine whether there was a factual basis to support the allegations against Calabrese before filing a complaint. During the discovery period, Plaintiffs contend, the Lefkowitz Defendants committed numerous bad faith litigation tactics to drive up Calabrese's legal fees. Eventually, CSC agreed to drop the action against Calabrese.

### B Mel Gevanter

Without conducting an investigation as to whether Gevanter used a decoder to intercept its cable programming, CSC accused him of stealing cable programming and demanded that he either pay $10,500 or face a lawsuit. When Gevanter refused to pay, the Lefkowitz Defendants sent him a letter threatening to file a lawsuit if he did not meet their settlement demands. Gevanter was advised by his legal counsel, Gary Ruff, Esq., to settle the action for $6,000 in order to avoid having his legal expenses driven up further by the Lefkowitz Defendants. Gevanter agreed to pay the $6,000 settlement demand.

Plaintiffs claim that neither CSC nor the Lefkowitz Defendants made any attempts to ascertain the truth concerning his use of a decoder. In actuality, Gevanter did pos-

sess decoders, but they were allegedly used to descramble wedding videos in connection with his job as a photographer. Without any proof, Defendants accused him of stealing cable and commenced an action against him.

### C Anthony Fiore

Without conducting an investigation to ascertain whether Fiore used a pirate box, CSC accused him of intercepting cable programming and threatened to sue him unless he paid them $5,000 for each box. Again, when he refused to pay, the matter was turned over to the Lefkowitz Defendants. Plaintiffs claim that he was compelled to pay the $5,000 settlement demand, despite his continuing denial that he stole cable.

### D Stewart Kalter

CSC accused Kalter of stealing cable programming without conducting an initial investigation and demanded that he pay them $3,500. Kalter asserts that he did purchase a pirate box, but only to enhance his cable reception, not to gain any illegal access to the system. At the time of the Amended Complaint, CSC was threatening to send the matter to the Lefkowitz Defendants to commence a lawsuit.

### E Ralph Reel

Without conducting an investigation, CSC accused Reel of using a cable decoder to steal cable television service and threatened to sue him unless he paid them $3,000. Reel allegedly purchased a remote device that would enable his television to receive additional channels, but he denies receiving any programming using a device for which he did not pay. Reel agreed to pay the $3,000 settlement demand in order to avoid defending the dispute.

### F Sylvia Howell–Fridie

Howell–Fridie was accused of stealing cable programming by CSC without any substantive proof. Howell–Fridie admits purchasing the device, but thought that it did not operate with cable television. When she realized that it did, she returned the device before using it to intercept cable programming. The Lefkowitz Defendants then sued Howell–Fridie for violating the Communications Act. Howell–Fridie responded with a letter explaining her situation. When she did not hear back from the Lefkowitz Defendants, Howell–Fridie believed that the matter had been resolved, but later learned that a default judgment had been entered against her. Plaintiffs allege that the Defendants failed to conduct an investigation prior to suing Howell–Fridie and obtaining a default judgment against her.

### G Steven Schiff

Without conducting an investigation, CSC mailed a letter to Schiff accusing him of using a decoder without authorization and demanded $2,000 to settle the dispute. Even though Schiff contends that he never received the decoder that he ordered, he paid the $2,000 settlement demand to avoid mounting legal fees.

### DISCUSSION

A district court should grant a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these

allegations as true. *Id.* at 249, 109 S.Ct. 2893; *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate liberal system of "notice pleading" employed by the Federal Rules of Civil Procedure).

On a motion to dismiss, the appropriate inquiry is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support those claims." *Harriman v. I.R.S.,* 233 F.Supp.2d 451, 456 (E.D.N.Y.2002) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). A claimant need only give a statement that gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

I *18 U.S.C. § 1962(c)*

Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(c) by engaging in an ongoing scheme to extort and defraud its customers. 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Plaintiffs claim that Defendants have violated RICO by engaging in a scheme to accuse individuals of violating the Communications Act, by using decoders to intercept their cable television programming, without proof, in an effort to obtain settlement monies from the customers.

■ "To sufficiently state a RICO claim, [p]laintiffs must plead '(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.'" *Cyber Media Group, Inc. v. Island Mortgage Network, Inc.,* 183 F.Supp.2d 559, 578 (E.D.N.Y. 2002) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

A *Pattern of Racketeering Activity*

■ "To adequately plead a pattern of racketeering activity under § 1962(c), a plaintiff must allege that a defendant committed two or more acts of racketeering activity." *Id.* (internal citations omitted). Under RICO, "'[r]acketeering activity' is defined ... to mean 'any act or threat involving' specified state-law crimes, any 'act' indictable under various specified federal statutes, and certain federal 'offenses' ....'" *Northwestern Bell Tel. Co.,* 492 U.S. at 232, 109 S.Ct. 2893 (quoting 18 U.S.C. § 1961(1)). The state-law crimes that are considered racketeering activities under 1961(1) include "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(a).

1 *18 U.S.C. §§ 1341 and 1343*

Plaintiffs have alleged that Defendants violated 18 U.S.C. §§ 1341 and 1343 by engaging in mail and wire fraud. Plaintiffs assert that Defendants committed mail and wire fraud when they sent letters and made phone calls to Plaintiffs concerning the alleged violations of the Communications Act. In doing so, Plaintiffs claim, Defendants have committed racketeering activity, known as a predicate act, under RICO. Defendants argue that Plaintiffs have not proffered any evidence to estab-

lish mail or wire fraud and, therefore, these alleged violations cannot serve as predicate acts under RICO.

■ Under 18 U.S.C. § 1961(1), mail fraud and wire fraud both constitute predicate acts. *Arizona Premium Finance, Inc. v. Bielli,* 77 F.Supp.2d 341, 346 (E.D.N.Y.1999); *see also In re Sumitomo Copper Litig.,* 104 F.Supp.2d 314, 319 (S.D.N.Y.2000). 18 U.S.C. § 1343 provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.

The mail fraud statute, 18 U.S.C. § 1341, is similar to the wire fraud statute in all material respects to this discussion. "The elements of a claim of mail or wire fraud are: (1) the existence of a scheme to defraud involving money or property; and (2) the use of the mails or wires in furtherance of the scheme." *In re Sumitomo,* 104 F.Supp.2d at 319 (citations omitted).

■ "In pleading a violation of the mail and wire fraud statutes, Rule 9(b) of the Federal Rules of Civil Procedure must be satisfied." *Id.* Rule 9(b) provides in relevant part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). In cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information. *See Schmuck*

*v. United States,* 489 U.S. 705, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). "In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *In re Sumitomo,* 104 F.Supp.2d at 321 (*quoting In re Sumitomo,* 995 F.Supp. 451, 456 (S.D.N.Y.1998)). Under these circumstances, Rule 9(b) only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme. See *id.*

■ Here, Plaintiffs have satisfied the pleading standard under Rule 9(b) relating to allegations of an ongoing scheme to defraud. Plaintiffs have alleged that the Defendants were involved in a scheme to defraud the individuals charged with stealing cable programming. The assertions made by Plaintiffs concerning the agreement between the Defendants to accuse individuals of intercepting cable in violation of the Communications Act, as well as threatening to file a lawsuit against them unless they paid settlement demands, were made with "adequate particularity" to plead a violation of the mail and wire fraud statutes under Rule 9(b). In addition, there is no question that Defendants used the mail and wires in furtherance of this alleged scheme, as Defendants are alleged to have made telephone calls and sent letters in furtherance of the scheme.

Defendants contend that Plaintiffs failed to allege any misrepresentations by Defendants and also failed to allege an injury as a result of the purported scheme. With respect to Defendants' argument that there were no allegations of misrepresentation, Plaintiffs alleged in the Amended Complaint that Defendants intended to defraud Plaintiffs by misrepresenting that the mere purchase of a cable decoder violated the Communications Act. Amended

Complaint ¶ 24. This allegation is sufficient to establish a misrepresentation. Further, as stated above, the communications themselves need not contain misrepresentations where they are alleged to be made in furtherance of a larger underlying scheme to defraud.

■ With respect to Defendants' argument that Plaintiffs did not sustain any injuries, Plaintiffs alleged that they were injured as a result of these misrepresentations. To establish injury by reason of Defendants' purported mail and wire fraud, Plaintiffs must allege that they relied on Defendants' misrepresentations to their detriment. *Vicon Fiber Optics Corp. v. Scrivo*, 201 F.Supp.2d 216, 219 (S.D.N.Y. 2002) (citing *Metromedia v. Fugazy*, 983 F.2d 350, 368 (2d Cir.1992)). Plaintiffs have sufficiently alleged that they suffered injuries in the form of attorneys' fees and settlement payments. Plaintiffs claim that, if not for Defendants' misrepresentations that the purchase of a pirate box was sufficient to violate the Communications Act, they would not have been forced to hire attorneys or pay CSC's settlement demands. These monetary injuries were alleged to be the direct result of Defendants' ongoing scheme.

As such, the Court finds that Plaintiffs have satisfied the pleading requirements of Rule 9(b) and have sufficiently alleged the elements required to establish the violation of the mail and wire fraud statutes. As previously stated, mail and wire fraud constitute predicate acts under RICO. Plaintiffs have, therefore, sufficiently plead two or more predicate acts, in order to establish a pattern of racketeering activity pursuant to the RICO statute.

### 2 Hobbs Act

■ Plaintiffs allege that Defendants violated the Hobbs Act, 18 U.S.C. § 1951, when engaging in the alleged fraudulent scheme. Under 1961(1), the Hobbs Act may serve as a predicate act for a RICO claim. *See* 18 U.S.C. § 1961(1). The Hobbs Act relates to interference with commerce through threats and violence. The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Under the Hobbs Act, the element of fear may be satisfied by a showing that the victim was placed in fear of economic harm. *United States v. Capo*, 817 F.2d 947, 951 (2d Cir.1987). The victim must have reasonably believed: "first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment." *Id.; see also United States v. Peterson*, 233 F.Supp.2d 475, 494 (E.D.N.Y.2002). Of course, the use of economic threats to obtain property is wrongful only if the defendant does not have a claim of right to that property. *See U.S. v. Jackson*, 180 F.3d 55, 68 (2d Cir.1999); *G–I Holdings, Inc. v. Baron & Budd*, 179 F.Supp.2d 233, 259 (S.D.N.Y.2001).

■ Defendants argue that threatening or instituting litigation does not constitute extortion. However, Defendants oversimplify the Plaintiffs allegations. Plaintiffs here do not merely allege that Defendants instituted frivolous lawsuits. Plaintiffs allege that Defendants entered into an agreement and formed an association for the purpose of compelling individuals to pay monies to them. Plaintiffs further allege that the agreement involved the use of misrepresentations, threats and lawsuits in order to obtain the monies. Finally, Plaintiffs allege that Defendants agreed to use these tactics in order to compel individuals to pay them monies, whether or not the Defendants had any legal entitlement to the monies. The

scheme alleged by the Plaintiffs, assuming all of their allegations are true and drawing all inferences in their favor, as the Court must on this motion, amounts to much more than the institution of frivolous litigation and, at this stage, satisfies the pleading requirements for establishing that Defendants engaged in a Hobbs Act violation.

Plaintiffs allege that Defendants' continuing scheme included the wrongful use of fear, in particular the fear of having to defend a lawsuit and the fear of paying a settlement demand. As stated above, the fear of economic loss is sufficient to satisfy this element of the Hobbs Act. *Capo*, 817 F.2d at 951. It was reasonable for each individual Plaintiff to believe that the Defendants had the ability to harm them and would do so if given the chance. Plaintiffs also allege that this threat of economic harm was not justified because Defendants' had no claim of entitlement to the settlement monies, because they had no evidence that the Plaintiffs had violated the Communications Act. The result of Defendants' conduct was to deplete Plaintiffs' assets by forcing them to obtain counsel and agree to the settlement demands.

In addition, Plaintiffs must allege that Defendant's conduct interfered with interstate commerce. "If the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act." *Jund v. Hempstead*, 941 F.2d 1271, 1285 (2d Cir.1991) (citing *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir.1981)). However, in this case, the Plaintiffs have alleged no interference with interstate commerce whatsoever.

The Court notes that the Plaintiffs' argue that under the "depletion of assets" theory, if it is shown that an individual's assets are depleted, thereby impairing his or her ability to purchase a commodity that travels in interstate commerce, it will establish a sufficient nexus to interstate commerce to establish a violation under the Hobbs Act. *See United States v. Jones*, 30 F.3d 276, 285 (2d Cir. 1994). Plaintiffs' argue that the depletion of assets theory applies in this case because each of the Plaintiffs was forced to pay monies to the Defendants, thus depleting their assets and impairing their ability to purchase commodities that travel in interstate commerce. However, the Court is not convinced that the depletion of assets theory, as enunciated in *Jones*, applies to the facts of this case. The Court has found no case that applied the depletion of assets theory in a case involving individual victims, instead the theory applies where the victim is a business, with records which can sufficiently document a pattern of trade in interstate commerce. "The victim's purchase of interstate goods, ... must be of a continuing nature or the relationship between the extortion and any interstate commerce becomes merely conjectural. The cases [cited] all involve ongoing establishments with recurring shipments from out-of-state." *United States v. Merolla*, 523 F.2d 51, 54 (2d Cir.1975). The Court does not intend to rule that the depletion of assets theory can never be applied in a case involving an individual victim. However, the depletion of assets theory can only apply where the victim is shown to have regularly engaged in interstate commerce. Here, the Plaintiffs' have not alleged that any of the victims regularly engaged in interstate commerce. As such, the depletion of assets theory cannot satisfy the interstate commerce requirement. Having plead no other connection to interstate commerce, the Plaintiffs' have failed to allege a violation of the Hobbs Act. Therefore, the alleged Hobbs Act vio-

lation cannot serve as a predicate act to sustain Plaintiffs' RICO claim.

#### 3 *18 U.S.C. §§ 875, 876, 880 & N.Y. Penal § 190.65*

■■■ Plaintiffs allege that Defendants violated 18 U.S.C. §§ 875, 876, 880 and New York Penal Code section 190.65 and that these violations may also serve as predicate acts under RICO. However, "[t]hose offenses which may serve as predicate acts for a RICO claim are exclusively listed in § 1961." *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F.Supp. 576, 586 (S.D.N.Y.1995) (citing 18 U.S.C. § 1961(1)). Sections 875, 876, 880, and New York Penal Code section 190.65 are not listed in 1961(1) and are therefore not among those offenses which may constitute a predicate act.

■■■ Plaintiffs claim that the New York Penal Code statute is a predicate act under RICO because § 1961(1)(a) includes a provision which states that a state-law claim for extortion that is punishable by more than one year is considered a racketeering activity. *See* 18 U.S.C. § 1961(1)(a). However, New York Penal Law section 190.65, entitled "Scheme to Defraud in the First Degree," is a state-law fraud crime, not a state-law extortion crime. "The plain language of [§ 1961(1)] does not include the conduct prohibited by N.Y.P.L. § 190.65." *State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*, 909 F.Supp. 137, 144 (S.D.N.Y.1995) (internal citations omitted). Therefore, none of these alleged violations may serve as predicate acts for a RICO claim.

Although these acts cannot constitute predicate acts under RICO, Plaintiffs have, as discussed above, sufficiently plead a pattern of racketeering activity through mail and wire fraud. As such, Plaintiffs have sufficiently established that Defendants engaged in a pattern of racketeering activity.

#### B *RICO Enterprise*

In addition to alleging a pattern of racketeering activity, Plaintiffs must allege the existence of an "enterprise" under 18 U.S.C. § 1961(4) in order to fulfill the pleading requirements for a RICO claim. Defendants contend that the "enterprise" alleged by Plaintiffs does not satisfy § 1961(4) because a corporate entity cannot simultaneously be the enterprise and the person conducting the affairs of the enterprise. Defendants assert that since these categories are not distinct, there is no RICO enterprise.

■■■■ 18 U.S.C. § 1961(4) defines an "enterprise" as: "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Second Circuit has construed the enterprise element of RICO claims liberally, holding that "[t]he language and the history of RICO suggest that Congress sought to define the term [enterprise] as broadly as possible ...." *In re Sumitomo*, 104 F.Supp.2d at 317–18 (quotations omitted). In addition, "[a]llegations of the existence of a RICO enterprise must meet only the 'notice pleading' requirements of Fed. R. Civ. Pro. 8." *Id.* at 319; *see also Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1145 (S.D.N.Y.1995). At this time, nothing more than the allegations made by Plaintiff are necessary.

Defendants claim that Plaintiffs have not alleged a RICO enterprise because the enterprise and the person charged with operating the racketeering activity must be distinct. However, "[t]his Circuit has explicitly rejected the view that evidence offered to prove the 'enterprise' and the

'pattern of racketeering activity' must necessarily be distinct." *In re Sumitomo*, 104 F.Supp.2d at 318; *see also Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 349 n5 (S.D.N.Y.1998). Therefore, Plaintiffs are not required to establish that the alleged enterprise and racketeering activity are two separate entities. Regardless, Plaintiffs have sufficiently plead an enterprise under § 1961(4), that is a distinct entity from each of the Defendants individually. Plaintiffs alleged that CSC and the Lefkowitz Defendants formed an association-in-fact to deprive Plaintiffs of their property. Amended Complaint ¶ 127. Plaintiffs also claim that the Lefkowitz Defendants are directly involved in the scheme, offering circumstantial allegations that the Lefkowitz Defendants do not work on a contingency basis and that they represent the only two cable operators who regularly sue their customers. Amended Complaint ¶ 35. This alleged association-in-fact is sufficient under § 1961(4) to constitute an "enterprise" for the purpose of the RICO claim.

Having found that the Plaintiffs have sufficiently alleged a pattern of racketeering activity engaged in by a RICO enterprise, the Court finds that the Complaint adequately alleges a violation of 18 U.S.C. § 1962. As such, the Defendants' motion to dismiss that cause of action is DENIED.

## II *18 U.S.C. § 1962(a)*

Plaintiffs have also alleged violations of 18 U.S.C. § 1962(a). Under this section:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income,

in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interest or foreign commerce.

18 U.S.C. § 1962(a). "[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir.1990). In addition, since the conduct constituting a violation of § 1962(a) is investment of racketeering income, "a plaintiff must allege injury from the defendant's investment of the racketeering income to recover ...." *Id.* Defendants maintain that Plaintiffs have not sufficiently alleged an investment of racketeering income or an injury that directly resulted from such conduct.

While Plaintiffs have adequately alleged injuries resulting from the Defendants' conduct, they have not shown that these injuries were caused by Defendants' investment of any racketeering income. Plaintiffs state in their Amended Complaint that "Defendants used or invested the income derived, directly or indirectly, from a pattern of racketeering activity." Amended Complaint ¶ 140. However, Plaintiffs have not made any specific allegations concerning how the racketeering income was invested and how that investment directly resulted in their injuries. "In the context of subsection 1962(a), ... we have required that the plaintiff allege a 'use or investment injury' that is distinct from the injuries resulting from predicate acts." *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir.1996). Here, with respect to Plaintiffs' claim of 1962(a) violations, they have not alleged distinct injuries from those set forth under § 1962(c) resulting from the predicate acts.

In addition, "[a]s a matter of law, reinvestment of racketeering income is in-

sufficient to make out a cause of action under RICO." *Allen v. New World Coffee, Inc.*, No. 00 Civ. 2610, 2002 WL 432685, *4, 2002 U.S. Dist. LEXIS 4624, at *14 (S.D.N.Y. Mar. 19, 2002); *see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 657 (S.D.N.Y.1996), *aff'd*, 113 F.3d 1229, 1997 WL 259746 (2d Cir.1997). "Where reinvestment of racketeering proceeds back from the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity." *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 113 F.Supp.2d 345, 384 (E.D.N.Y. 2000) (internal citations omitted). Since Plaintiffs have not alleged any distinct injuries resulting from the reinvestment by Defendants of the settlement demands, they cannot sustain a claim for damages under § 1962(a). Therefore, Defendants' motions to dismiss Plaintiffs' § 1962(a) claim is GRANTED.

### III 18 U.S.C. § 1962(d)

Plaintiffs have alleged that the Defendants engaged in a conspiracy to commit the acts mentioned above in violation of 18 U.S.C. § 1962(d). 18 U.S.C. § 1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

 "[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Property Holding, Inc. v. U.S. Traffic Corp.*, 206 F.Supp.2d 362, 373 (E.D.N.Y. 2002) (internal citations omitted). Plaintiffs claim that the Defendants had a "meeting of the minds," agreeing to accuse

and prosecute individuals without proof and to represent that ordering or possessing a pirate box is illegal. Plaintiffs further allege that the Lefkowitz Defendants represent the only two cable operators, CSC and Time Warner, who regularly sue their subscribers for stealing cable. Amended Complaint ¶ 35. These allegations suggest that the Lefkowitz Defendants played a much larger role in the scheme than they have admitted to, which is merely representing CSC in these lawsuits.

 To be convicted of conspiracy to violate RICO under § 1962(d), the conspirator need not himself have committed or agreed to commit the two or more predicate acts, as long as each agreed to act in furtherance of the scheme. *Salinas v. United States*, 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). Under this statute, there is no requirement of some overt act in furtherance of the conspiracy. *Id.* Therefore, Plaintiffs' allegations that the Defendants conspired to defraud Plaintiffs are sufficient to allege a conspiracy to violate § 1962(c) as stated above. Consequently, Defendants' motions to dismiss with respect to § 1962(d) are DENIED.

### IV State–Law Claims

 When a federal district court has original jurisdiction over a civil cause of action, the Court may exercise supplemental jurisdiction over other claims that do not independently come within its jurisdiction but that form part of the same "case or controversy" under Article III. *Jinks v. Richland County*, —— U.S. ——, ——, 123 S.Ct. 1667, 1669, 155 L.Ed.2d 631 (2003) (*citing* 28 U.S.C. § 1367(a)). District courts may decline to exercise supplemental jurisdiction over a claim under certain circumstances, as enumerated in 28 U.S.C. § 1367(c), such as when the claim raises a novel or complex issue of state

law, when the state law claim predominates over the federal claims and when the district court has already dismissed the claims over which it had original jurisdiction. Here, the state-law claims do not raise novel or complex issues of state law and do not predominate over the federal claims. Also, this Court has not dismissed all of the claims over which it has original jurisdiction. Therefore, "[p]laintiffs' state-law claims, which arise out of the same operative facts as their federal RICO claim, fall within this Court's supplemental jurisdiction." *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,* 957 F.Supp. 1308, 1322 (S.D.N.Y.1997).

### A *Fraud*

■ To sustain a claim of common law fraud in New York, "Plaintiffs must plead that Defendants made 'a representation of fact, which was untrue and either known by defendant to be untrue or recklessly made', which was offered to deceive and to induce the other party to act upon it, and which caused injury." *Cyber Media Group,* 183 F.Supp.2d at 580 (internal citations omitted). The pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure also apply to these state-law fraud claims. *See* Fed. R. Civ. P. 9(b). Therefore, Plaintiffs must state with adequate particularity the specific circumstances constituting the overall fraudulent scheme.

■ Plaintiffs have sufficiently detailed the circumstances surrounding Defendants' scheme to defraud. Plaintiffs claim that Defendants represented that merely ordering or possessing a decoder is illegal under the Communications Act and that they had the right to sue Plaintiffs for using such a device. Amended Complaint ¶ 152. Plaintiffs also claim that Defendants knew that these representations were false and that ordering or possessing a decoder

alone does not violate the Communications Act. Amended Complaint ¶ 154. Plaintiffs assert that Defendants knew that possessing a decoder was not sufficient to constitute a violation of the Communications Act based on their own involvement in previous lawsuits. "[I]t is not a crime, nor a basis for a civil claim, for an individual to purchase or possess pirate descrambling devices, even if it appears that possession is with the intent to distribute." *V Cable, Inc. v. Guercio,* 148 F.Supp.2d 236, 242–243 (E.D.N.Y.2001); *see also Cablevision of Conn., L.P. v. Sollitto,* 109 F.Supp.2d 84, 86 (D.Conn.2000).

This deception was allegedly used to induce Plaintiffs to act and sustain injuries in the form of attorneys' fees and settlement demands. Since Plaintiffs' claims have adequately stated a claim for common law fraud in New York with sufficient particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure, Defendants' motions to dismiss with respect to the state law fraud claim are DENIED.

### B *Unjust Enrichment*

■ Under New York law, to sustain a claim for unjust enrichment, a plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC,* 273 F.3d 509, 519 (2d Cir.2001) (citing *Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 79 (2d Cir.1986)).

■ Defendants contend that Plaintiffs claim for unjust enrichment should be dismissed because Defendants have not received any benefit from these alleged activities. However, it is clear that Defendants were enriched when several of the Plaintiffs agreed to pay their settle-

ment demands. When Plaintiffs were forced to settle, Defendants received thousands of dollars of Plaintiffs' money. In addition, equity and good conscience dictate that Defendants return the allegedly extorted settlement demands to Plaintiffs if the Plaintiffs claims are proven. Since Plaintiffs have adequately plead the elements necessary for an unjust enrichment claim, Defendants' motions to dismiss with respect to unjust enrichment are DENIED.

### C *New York General Business Law § 349*

■■■■■ New York General Business Law § 349 prohibits: "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. L. § 349(a) (McKinney 2000). "In order to state a claim under Section 349, plaintiffs must allege that: 1) defendants engaged in conduct that is deceptive and misleading in a material way; 2) the deceptive conduct was 'consumer-oriented,' and 3) plaintiffs have been injured 'by reason of' defendants' conduct." *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F.Supp.2d 280, 285–286 (E.D.N.Y.2002) (*quoting In re MTBE Products Liab. Litig.*, 175 F.Supp.2d 593, 630 (S.D.N.Y.2001)). Plaintiffs allege that Defendants violated Section 349 because they knowingly deceived Plaintiffs by representing to them that merely possessing a pirate cable box violates the Communications Act.

Plaintiffs' allegations are sufficient to sustain a claim under Section 349. Plaintiffs contend that Defendants engaged in deceptive conduct in a material way by accusing Plaintiffs of stealing cable programming without any definitive proof and then stating that ordering or possessing a decoder can be the basis for a civil claim

against them. As a result, Plaintiffs were forced to either pay their settlement demands or face litigation. Plaintiffs' monetary injuries were the direct consequence of Defendants' misleading statements concerning the illegality of ordering or possessing a decoder. This behavior was also allegedly aimed at all consumers who were similarly situated to Plaintiffs so that Defendants could continue this ongoing scheme. Amended Complaint ¶¶ 168, 171. Therefore, Plaintiffs have sufficiently alleged a violation of New York General Business Law § 349 and Defendants' motions to dismiss with respect to this claim are DENIED.

### *CONCLUSION*

For the reasons set forth herein, the Defendants' motion to dismiss is GRANTED, in part, and DENIED in part. The motion is GRANTED as to the Plaintiff's claim under 18 U.S.C. § 1962(a) and that claim is DISMISSED, without prejudice. The motion is DENIED as to the Plaintiffs' claims under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). The motion is DENIED as to the Plaintiffs' state law claims. The Plaintiffs are hereby GRANTED leave to file an amended complaint, restating the dismissed action, within 20 days of the date of this Order.

SO ORDERED